Megan Mackie (SBN 325004)
**MACKIE LAW, APC**
20 Pacifica
Suite 850
Irvine, CA 92618
Tel: (949) 702-8685
Email: megan@mackieemploymentlaw.com

Attorneys for Defendant WALMART INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIELO AREVALO, an individual,<br><br>            Plaintiff,<br><br>      v.<br><br>WALMART INC., a Delaware Corporation; CHRISTOPHER CRUZ, an individual; and DOES 1 through 100, inclusive;<br><br>            Defendants. | Case No. 2:26-cv-02432<br><br>[Removed from Los Angeles County Superior Court Case No. 26STCV03497]<br><br>**DEFENDANT WALMART INC.'S PETITION FOR REMOVAL**<br><br>Action Filed:     February 3, 2026<br>Trial Date:       None Set |

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendant WALMART INC. hereby removes this action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California, on the following grounds:

///

///

-1-
DEFENDANT WALMART INC.'S PETITION FOR REMOVAL

## I.   INTRODUCTION

1.   This Court has jurisdiction over this action because complete diversity exists between Plaintiff CIELO AREVALO ("Plaintiff") and Defendant WALMART INC. ("Walmart" or "Defendant").

2.   Plaintiff is a citizen of the State of California, and was a California citizen at the time of the filing of the Complaint.

3.   Walmart is now, and was at the time this action was filed, a citizen of the State of Arkansas and a citizen of the State of Delaware within the meaning of 28 U.S.C. section 1332. At all material times, Walmart was a corporation organized under the laws of the State of Delaware, and at all material times Walmart has maintained its principal place of business, including its corporate headquarters, in the State of Arkansas.

4.   Plaintiff's Complaint, on its face, contemplates an amount in controversy that exceeds the sum or value of $75,000, exclusive of interest and costs.

5.   Pursuant to 28 U.S.C. section 1446(b)(1), this case is being removed within thirty (30) days of service of the Complaint upon Walmart.

## II.   THE STATE COURT ACTION

6.   On February 3, 2026, Plaintiff filed an action against Walmart titled "CIELO AREVALO v. WALMART, INC. a Delaware Corporation; CHRISTOPHER CRUZ, an individual; and DOES 1 through 100, inclusive;" (the "State Court Action"). Walmart was served with copies of the Summons, Complaint, Civil Case Cover Sheet and Addendum, Alternate Dispute Resolution ("ADR") Package, and NOTICE OF CASE ASSIGNMENT on February 5, 2026. Attached hereto as **Exhibit A** are true and correct copies of the Summons, Complaint, Proof of Service, ADR Package, Civil Case Cover Sheet and Addendum, and NOTICE OF CASE ASSIGNMENT.

DEFENDANT WALMART INC.'S PETITION FOR REMOVAL

7.      On March 4, 2026, Walmart filed an Answer to the Complaint. A true and correct copy of Walmart's Answer is attached hereto as **Exhibit B**.

8.      The Summons, Complaint, Proof of Service, ADR Package, Civil Case Cover Sheet and Addendum, NOTICE OF CASE ASSIGNMENT, and Answer constitute the pleadings, process, and orders served upon or by Walmart in the State Court Action.

## III.      <u>COMPLETE DIVERSITY EXISTS BETWEEN PLAINTIFF AND WALMART</u>

9.      The Complaint, and each alleged cause of action asserted therein, may be properly removed on the basis of diversity jurisdiction, in that this is a civil action between citizens of different states. Plaintiff's claims against Walmart contemplate an amount in controversy that exceeds the sum of $75,000, exclusive of interest and costs. (28 U.S.C. § 1332.)

10.      Plaintiff is now, and was at the time this action was filed, a citizen of the State of California within the meaning of U.S.C. § 1332(a) -- her place of residence is in the State of California. (*See* Ex. A, Complaint, ¶ 1.)

11.      If a party is a corporation, it is a citizen of both its state of incorporation and the state where it has its principal place of business. (28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).)

12.      Walmart is now, and was at all material times, a corporation organized under the laws of the State of Delaware. (Declaration of Megan A. Mackie ("Mackie Dec.") ¶ 2, Ex. A.) Walmart is therefore a citizen of the State of Delaware.

13.      Walmart is now, and was at all material times, headquartered in Bentonville, Arkansas. (*Id*.) Walmart's officers and directors are employees whose offices are located at its headquarters in Bentonville, Arkansas. Walmart's high-level officers direct, control, and coordinate the corporation's activities from Walmart's headquarters in Bentonville, Arkansas. And Walmart performs the vast

DEFENDANT WALMART INC.'S PETITION FOR REMOVAL

majority of its executive and administrative functions at its headquarters in Bentonville, Arkansas. Walmart is therefore a citizen of the State of Arkansas, because its principal place of business is in Bentonville, Arkansas. (28 U.S.C. §1332(c); *Hertz Corp*., 130 S. Ct. at 1192 ("[W]e conclude that the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities").)

14.    Therefore, for the purpose of determining jurisdiction, Walmart was not (and is not) a citizen of the State of California, but rather, it was (and is) a citizen of the States of Delaware and Arkansas.

15.    "Doe" Defendants fictitiously named, but not served, are not joined in this Petition and Notice of Removal and shall be disregarded for the purpose of determining removal jurisdiction. (28 U.S.C. § 1441(b)(1). In determining whether diversity of citizenship exists, only the named defendants are considered. (*Newcombe v. Adolf Coors Co*. 157 F. 3d 686, 690-691 (9th Cir. 1998).)

16.    Accordingly, complete diversity exists between Plaintiff and Walmart.

17.    In her Complaint, Plaintiff alleges nine causes of action: 1. Disability Discrimination (Gov. Code § 12940(a)); 2. Hostile Work Environment Harassment (Gov. Code § 12940(j)); 3. Failure to Engage in the Interactive Process (Gov. Code § 12940(n)); 4. Failure to Accommodate Disability in Violation of FEHA (Gov. Code § 12940(m)); 5. Failure to Prevent Harassment, Discrimination or Retaliation (Gov. Code § 12940(k)); 6. Retaliation in Violation of the FEHA (Gov. Code § 12940(h), (m)); 7. Failure to Pay Compensation Due Upon Separation (California Labor Code § 203); 8. Wrongful Termination in Violation of Public Policy; and 9. Intentional Infliction of Emotional Distress.

DEFENDANT WALMART INC.'S PETITION FOR REMOVAL

## IV. NAMING CRUZ AS A DEFENDANT DOES NOT DESTROY DIVERSITY BECAUSE IT IS OBVIOUS THAT HE WAS JOINED FOR THE PURPOSE OF AVOIDING FEDERAL JURISDICTION

18. Plaintiff's Complaint also names Christopher Cruz ("Cruz") as an individual defendant. Plaintiff alleges, upon information and belief, that Cruz "is an individual residing in the State of California, and was one of Plaintiff's supervisors and the WALMART store manager of the location Plaintiff worked at all times herein mentioned." (*See* Ex. A, Complaint, ¶ 3.)

19. However, Cruz's citizenship can be disregarded because he is a sham defendant, fraudulently joined for the purpose of avoiding federal jurisdiction. Indeed, a defendant's right of removal cannot be defeated by the fraudulent joinder of a non-diverse defendant. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir. 1998) ("[i]t is commonplace that fraudulently joined defendants will not defeat removal on diversity grounds").

20. In the Ninth Circuit, a non-diverse defendant is deemed a sham, and will not defeat jurisdiction, "if a plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the well-settled rules of the state." *United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002); *see also Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *see also Charlin v. Allstate Ins. Co.*, 19 F. Supp. 2d 1137, 1140 (C.D. Cal. 1998) citing *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979), aff'd, 710 F.2d 549 (9th Cir. 1983) ("A joinder is fraudulent if there is no intention to get a joint judgment, and there is no colorable ground for so claiming.").

## V. AS A MATTER OF LAW, PLAINTIFF CANNOT POSSIBLY RECOVER AGAINST CRUZ FOR THE CLAIMS ASSERTED AGAINST HIM AND HE HAS NO INTENTION OF DOING SO

21. The Complaint purports to two causes of action against "All Defendants", suggesting Plaintiff is asserting these two causes of action against

Cruz: Hostile Work Environment Harassment (Cause of Action Two), and Intentional Infliction of Emotional Distress (Cause of Action Ten). (*See* Ex. A, Complaint, pgs. 9:1, 16:26.)

22.    However, Plaintiff cannot show liability against Cruz for any of these claims as discussed below.

   a.    **Plaintiff Cannot as a Matter of Law Prove Disability Harassment Against Defendant Cruz**

23.    Plaintiff makes the following factual allegations against Cruz[1]:

   a.    "AREVALO approached CRUZ, the store manager and one of her supervisors, requesting guidance and/or help and explaining her medical condition, but was largely dismissed by CRUZ. CRUZ responded negatively to AREVALO, appeared to not be care about AREVALO's condition, and was uninterested in assisting AREVALO. AREVALO was confused because CRUZ had never treated her in a negative manner prior this December 1, 2025 experience." (Ex. A, Complaint, ¶ 21.)

   b.    "On or about December 2, 2025, AREVALO attended her regularly scheduled work in her ill and declining health condition. AREVALO again sought help from the store manager and her supervisor CRUZ on initiating a medical leave of absence, but CRUZ was again dismissive of AREVALO and largely ignored her. AREVALO felt animosity from CRUZ, and she felt that CRUZ intentionally avoided AREVALO at work that day, knowing well of AREVALO's declining health condition and her need for help." (*Id.*, ¶ 23.)

[1] Plaintiff makes additional paragraphs of allegations providing subjective characterizations of Cruz's behavior, but does not plead additional facts regarding him.

c. "Upon arrival at the store on December 6, 2025, AREVALO requested to see CRUZ to show CRUZ the documentation and to seek guidance from CRUZ. When AREVALO attempted to present her medical documentation to CRUZ, CRUZ refused to accept or review AREVALO's documents, was dismissive of the information regarding AREVALO's hospital visit, and began ignoring AREVALO." (*Id*., ¶ 29.)

d. On information and belief, CRUZ played a significant influential role in WALMART's decision to terminate AREVALO. CRUZ was aware of AREVALO's disability and displayed animosity and contempt towards AREVALO due to her disability, need for accommodations, and disability/medical leave. (*Id*., ¶ 40.)

24.    None of these allegations support a cause of action for harassment on the basis of disability.

25.    Unlike other forms of discrimination, harassment claims concern actions "outside the scope of job duties which are not of a type necessary to business and personnel management." *Reno v. Baird*, 18 Cal.4th 640, 647 (1998). Specifically, actionable harassment "…consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives….No supervisory employee needs to use slurs or derogatory drawings, to physically interfere with freedom of movement, to engage in unwanted sexual advances, etc. in order to carry out the legitimate objectives of personnel management." *Id*. at 645-646.

26.    Here, Plaintiff's allegations against Cruz describe ordinary personnel management actions of responding to an employee's request for time off related to a purported disability and being a potential decisionmaker in her termination, neither of which constitutes actionable harassment under FEHA. *See Janken v. GM Hughes*

DEFENDANT WALMART INC.'S PETITION FOR REMOVAL

*Electronics*, 46 Cal.App.4th 55, 64–65 (1996).

27.    These alleged facts fail for the additional reason that they actually relate to claims for failure to accommodate or failure to engage in the interactive process, and Plaintiff cannot rely on a separate and distinguishable claim under FEHA to prop up her harassment claim.

28.    An alleged failure to accommodate Plaintiff is a separate actionable claim under FEHA, which Plaintiff has already asserted in her Complaint, and does not constitute a separate basis for harassment. *See Gardner v. City of Berkeley*, 838 F.Supp.2d 910, 926 (N.D. Cal. 2012). Indeed, well-established case law has concluded that a defendant's refusal to engage in accommodation requests is not harassment. "Plaintiff alleged two harassing acts within the statute of limitations: (1) Defendant forcing Plaintiff to apply rather than recognizing his request for reinstatement, and (2) Defendant's refusal to engage in any kind of dialogue about Plaintiff's request for accommodation. [citation omitted]. Neither act is harassment..." (*Gardner*, 838 F.Supp.2d 910, 926, [emphasis added]; citing *Reno*, 18 Cal.4th at 646–647.)

29.    Lastly, Plaintiff's allegations against Cruz fail for the additional reason that even if not viewed as personnel management activity, Cruz's alleged behavior does not rise to the level of actionable harassment. Plaintiff merely alleges that Cruz was "dismissive" or acted with "animosity" towards her requests for time off due to her purported disability. However, even "simple teasing, offhand comments, and isolated incidents (unless extremely serious) are not sufficient to create an actionable claim of harassment." *Kruitbosch v. Bakersfield Recovery Servs., Inc.*, 114 Cal. App. 5th 200, 211 (2025) (quoting *Bailey v. San Francisco Dist. Attorney's Office*, 16 Cal.5th 611, 628 (2024)); *accord Fisher v. San Pedro Peninsula Hospital*, 214 Cal.App.3d 590, 615 (1989) (ostracism does not amount to a hostile environment). Here, Plaintiff does not even allege that Cruz said or did anything to her that was of a teasing or off-hand nature. She just alleges that Cruz

-8-

DEFENDANT WALMART INC.'S PETITION FOR REMOVAL

was essentially non-responsive and non-helpful. This does not constitute harassment under California law.

30.    Accordingly, this claim against Cruz fails as a matter of law, and he should be considered a sham defendant.

     **b.**    **Plaintiff Cannot Show that Cruz is Liable for Intentional Infliction of Emotional Distress**

31.    A claim for IIED requires a showing of "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009).

32.    Proving "extreme and outrageous" conduct is a high bar. Conduct is extreme and outrageous when it exceeds all bounds of decency usually tolerated by a decent society, and is of a nature especially calculated to cause, and does cause, mental distress. *Id*. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Yurick v. Superior Court* 209 Cal.App.3d 1116, 1128 (1989).

33.    Further, IIED does not extend to management and/or personnel decisions made in the course and scope of employment. *See Janken v. GM Hughes Electronics,* 46 Cal.App.4th 55, 80 (1996).

34.    Here, the conduct alleged against Cruz clearly does not meet this high bar to attach liability to him. As described above in paragraph 23, Plaintiff only makes four factual allegations against Cruz that could form the basis of this claim. The first three allegations relate to how Plaintiff perceived Cruz handled her requests for time off due to a purported disability (Ex. A, Complaint, ¶¶ 21, 23, 29), and the fourth relates to Plaintiff's belief that he was involved in her termination. (*Id*., ¶ 40.)

35.     In other words, Plaintiff's only allegations against Cruz relate to how he handled her requests for time off and that she believes he was involved with her termination, both of which are standard personnel management actions.

36.     Even if the allegations related to Cruz's responses to her requests for time off were not considered standard personnel management actions, Cruz's conduct was not extreme and outrageous, as alleged. Plaintiff merely interpreted his responses to be dismissive or cold, which hardly "exceeds all bounds of decency usually tolerated by a decent society."

37.     Because Plaintiff only pleads standard personnel management actions and facts that support FEHA claims for failure to accommodate or failure to engage in the interactive process, neither of which constitutes extreme and outrageous conduct, the IIED claim against him fails as a matter of law, and he should be considered a sham defendant.

## VI.     THE AMOUNT IN CONTROVERSY EXCEEDS THE $75,000 JURISDICTIONAL MINIMUM

38. The jurisdictional minimum amount that must be in controversy was satisfied at the time of the filing of this action, and is still satisfied by the facts set forth herein and described more specifically below. (28 U.S.C. § 1332(a) ("[D]istrict courts …  have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between … citizens of different States."); *see also Matheson v. Progressive Specialty Ins., Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("[J]urisdiction founded on [diversity] requires that the parties be in complete diversity and the amount in controversy exceed $75,000").)

39. Walmart discusses below the allegations in the Complaint solely to demonstrate that the amount in controversy exceeds $75,000. Walmart denies that Plaintiff is entitled to any damages, and that Plaintiff will be able to recover on any of her theories of recovery.

40.     In assessing the amount in controversy, this Court may, for removal purposes, look to the removal papers and the pleadings, as well as summary judgement type evidence. (*Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *Singer v. State Farm Mutual Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).)

41. In measuring the amount in controversy for purposes of diversity jurisdiction, "a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." (*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (quotations omitted, emphasis added). In addition, the Court should aggregate damages in determining whether the controversy exceeds $75,000. *See Bank of Cal. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972) ("aggregation is permitted when a single plaintiff seeks to aggregate two or more of her own claims against a single defendant") (internal quotations omitted).)

42. Additionally, as the Ninth Circuit explained in *Chavez*, "the amount in controversy is not limited to damages incurred prior to removal--for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal)[; but] rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." (*Chavez*, 888 F.3d at 414-15.)

43. Here, Plaintiff seeks to recover (1) "general damages, including emotional distress damages, in excess of $500,000.000, or to otherwise be determined at trial"; (2) "special damages, in excess of $150,000.00, or to otherwise be determined at trial"; (3) "exemplary and punitive damages, in excess of $250,000.00, or to otherwise be determined at trial"; (4) "reasonable attorney's fees"; (5) "civil

DEFENDANT WALMART INC.'S PETITION FOR REMOVAL

penalties as permitted by statute"; (6) "pre-judgment and post-judgment interest at the maximum legal rate"; (7) "tax consequence adjustment or "gross up" award to compensate Plaintiff for her increased income tax responsibility following an award of compensatory damages"; (8) "costs of suit"; and (9) "such other and further relief as the Court deems just and proper." (Ex. A, Complaint, Prayer for Relief).

44. Thus, on the face of Plaintiff's complaint, Plaintiff is requesting over $900,000 (general damages in excess of $500,000, special damages in excess of $150,000, and exemplary and punitive damages of $250,000). (*Id*.) Accordingly, the amount in controversy is unambiguously met based on the face of Plaintiff's complaint.

**IV.   REMOVAL IS TIMELY**

45. This Petition and Notice of Removal is timely pursuant to 28 U.S.C. section 1446(b) because this action is being removed within thirty (30) days of service of the Summons and Complaint upon Walmart in which diversity of citizenship is apparent. (28 U.S.C. § 1446(b)(3).)

**V.   CONCLUSION**

46. For the reasons stated above, this Court has jurisdiction under 28 U.S.C. §§ 1332 and 1441 because this is a civil action between citizens of different states, and the matters placed in controversy by Plaintiff exceed $75,000, exclusive of interest and costs.

47. Accordingly, Walmart may remove the action to this Court pursuant to 28 U.S.C. §§ 1441. Thus, Walmart respectfully requests that this Court exercise its removal jurisdiction over this entire action under 28 U.S.C. §§ 1332, 1441, and 1446.

///

///

///

///

DEFENDANT WALMART INC.'S PETITION FOR REMOVAL

DATED:  March 6, 2026          MACKIE LAW, APC


By:  ___/s/ *Megan A. Mackie*___
          MEGAN A. MACKIE

     Attorneys for Defendant WALMART INC.

-13-

DEFENDANT WALMART INC.'S PETITION FOR REMOVAL